IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LINDA K. CARNEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:12-cv-00744 |
| v. ) | |
| ) | Judge Nixon |
| CAROLYN W. COLVIN, ) | Magistrate Judge Bryant |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Pending before the Court is Plaintiff Linda K. Carney's Motion for Judgment on the Administrative Record. (Doc. No. 9.) Magistrate Judge Bryant issued a Report and Recommendation ("Report") recommending that Carney's Motion be denied and the Commissioner's decision affirmed. (Doc. No. 14 at 17.) Carney filed Objections to the Report on January 20, 2015. (Doc. No. 19.) For the reasons stated below, the Magistrate Judge's Report is **ADOPTED** as modified below and Carney's Motion is **DENIED**.

### I. BACKGROUND

The extensive medical records in this case have been adequately summarized by the parties, thus the Court adopts the parties' statements of the case (Doc. Nos. 9-1 at 2–14; 10 at 1–2) and the procedural history as described by the Magistrate Judge (Doc. No. 14 at 1–4). The Court restates the facts and procedural history below as necessary to facilitate review of the Magistrate Judge's Report.

To be eligible for social security disability insurance benefits, a claimant has the ultimate burden to establish he or she is entitled to benefits by proving his or her

1

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A) (2012); *see Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

1. If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

2. If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

3. If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.

4. If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity ("RFC") (e.g., what the claimant can still do despite his or her limitations); if the claimant has the RFC to do his or her past relevant work, the claimant is not disabled. If the claimant is not able to do any past relevant work or does not have any past relevant work, the analysis proceeds to step five.

5. At the last step it must be determined whether the claimant is able to do any other work. At this step, the Commissioner must provide evidence of the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and RFC.

20 C.F.R. § 416.920(a) (2014); *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). Furthermore, "[i]n order to establish entitlement to disability insurance benefits, an individual

---

[1] The Listing of Impairments is found at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2014).

must establish that he became 'disabled' prior to the expiration of his insured status." *Moon*, 923 F.2d at 1182 (citing 42 U.S.C. § 423(a) and (c)).

Here, ALJ W. Thomas Bundy determined Carney's last insured date was December 31, 2001. Under the five-step analysis, he found (1) Carney had not engaged in substantial gainful activity from her alleged onset date, January 7, 1997, through her date last insured; (2) Carney had the following severe impairments: "hypothyroidism; sensory neuropathy; chronic urinary tract infections; fibromyalgia; depression; & personality disorder"; (3) Carney did not have an impairment that met or medically equaled one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) through the date last insured, Carney had the RFC "to perform light work . . . reduced by all of the following: the ability to perform only occasional postural actions, such as climbing, balancing, stooping, kneeling, crouching, and crawling; & the requirement that she be limited to the performance of unskilled work, where contact with the public is no more than incidental to the work performed"; (5) Carney was unable to perform her past relevant work, but was capable of performing jobs that existed in significant numbers in the national economy. (Tr. 25–33.) ALJ Bundy concluded that Carney was not under a disability from January 7, 1997, through the date last insured. (Tr. 34.)

Carney's request for review by the Appeals Council was denied, and Carney sought review of the Commissioner's decision before this Court on July 18, 2012. (*See* Doc. No. 1.) Carney objected to the ALJ's Decision on the following grounds: (1) the ALJ did not recognize Carney's somatoform disorder, generalized anxiety disorder, and chronic fatigue syndrome as severe impairments at step two of the sequential analysis; (2) the Vocational Expert's testimony was based on an incomplete hypothetical question, thus the ALJ erred in relying on the testimony at step five; (3) the ALJ erred by giving substantial weight to the testimony of Medical Expert

Barbara Felkins because parts of it are inaudible; (4) the ALJ erred by not properly weighing the opinions of an examining psychiatrist and Carney's treating physician; and (5) the ALJ's credibility assessment was erroneous. (Doc. No. 9-1.) Carney now seeks review of Magistrate Judge Bryant's Report recommending that the Commissioner's decision be affirmed.

## II. STANDARD OF REVIEW

The Court's review of the Report is *de novo*. 28 U.S.C. § 636(b) (2012). However, Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (2012). Therefore, the Court's review is limited to "a determination of whether substantial evidence exists in the record to support the [Commissioner's] decision and to a review for any legal errors." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is a term of art and is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison*, 305 U.S. at 229).

"Where substantial evidence supports the [Commissioner's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999). This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations because these factual determinations are left to the ALJ and to the Commissioner. *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d

1028, 1030 (6th Cir. 1992). Thus, even if the Court would have come to different factual conclusions than the ALJ as to the plaintiff's claim on the merits, the Commissioner's findings must be affirmed if they are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

### III.  CARNEY'S OBJECTIONS TO THE REPORT AND RECOMMENDATION

Carney objects to Magistrate Judge Bryant's Report and the ALJ's Decision on several grounds: (1) Carney did not present all relevant evidence to the ALJ (*see* Doc. No. 19 at 1, 5, 25, 26, 29, 52, 56, 70, 83, 85); (2) the ALJ erred by giving the greatest weight to Dr. Felkins' opinion because she based her testimony on incomplete records and was ill-prepared for the hearing (*see id.* at 1, 10, 18, 19, 62, 76); (3) the ALJ erred by ignoring the opinions of examining and treating physicians (*see id.* at 1, 10, 18, 19, 31, 62, 63, 75, 76); (4) the ALJ erred by giving any weight to the opinion of Dr. Taylor because he was not a treating source and based his opinions on incomplete medical records (*see id.* at 10, 16); (5) the ALJ improperly addressed certain medical findings (*see id.* at 18, 19, 21, 22, 40, 63–66); (6) the ALJ's adverse credibility determination was based on an incomplete understanding of the record (*see id.* at 31, 39, 41, 46, 47, 54, 58, 61, 71); and (7) the ALJ did not take notice of a prior disability determination from the state of Tennessee (*see id.* at 85).

Carney filed her objections pro se (*see* Doc. No. 16-1), and her objections raise points not addressed to the Magistrate Judge (*compare* Doc. No. 9-1 *with* Doc. No. 19). Pro se litigants' filings are liberally construed. *See Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004). However, objections not raised to the magistrate, but initially addressed to the district court, are waived. *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) (holding that "while the Magistrate Judge Act, 28 U.S.C. § 631 *et seq.*, permits *de novo* review by the district court if timely objections are filed, absent compelling reasons, it does not allow parties to raise at the

district court stage new arguments or issues that were not presented to the magistrate"). In her Motion, Carney did not argue that the record was incomplete, that Dr. Felkins' opinion was incomplete or incompetent, that the ALJ erred in giving weight to Dr. Taylor's opinion, or that the ALJ should have addressed a prior disability determination. (*See* Doc. No. 9-1.) Accordingly, those arguments are waived. The Court construes Carney's argument that the ALJ improperly addressed certain medical findings as a reprisal of her initial objection that the ALJ erred by not finding her anxiety disorder, chronic fatigue syndrome, and somatoform disorder were severe impairments. The Court addresses it and the remaining objections—that the ALJ erroneously disregarded treating source and examining physician opinions and erroneously discounted Carney's credibility—in turn.

1. *Severe Impairments*

Carney objects to the Magistrate Judge's recommendation that the ALJ's failure to list somatoform disorder, anxiety disorder, and chronic fatigue syndrome as severe impairments was harmless error. The plaintiff bears the burden at step two of presenting evidence of a severe impairment. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). This is a low bar: an impairment is non-severe "only if the impairment is a 'slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience.'" *Williamson v. Sec'y of Health & Human Servs.*, 796 F.2d 146, 151 (6th Cir. 1986) (quoting *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985)). However, an ALJ's failure to list an impairment as severe at step two is not reversible error if the ALJ considers the impairment at subsequent steps in the sequential evaluation process. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). In this case, the Magistrate Judge determined that "the evidence cited by

plaintiff appears to at best support the existence of a somatic component to her complaints to her various physicians," not that somatoform disorder was a severe impairment. (Doc. No. 14 at 11–12.) Furthermore, the ALJ considered the effect of the symptoms of chronic fatigue syndrome and anxiety disorder in making his RFC assessment. (*See id.* at 12–13.) Therefore, the ALJ's failure to list these impairments at step two was harmless. The Court concurs in this conclusion for the reasons stated below.

      A. Somatoform Disorder

Somatoform disorders are characterized by "physical symptoms for which there are no demonstrable organic findings or known physiological mechanisms." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.07. To satisfy Listing 12.07, a claimant must demonstrate that she has an "[u]nrealistic interpretation of physical signs or sensations associated with the preoccupation or belief that one has a serious disease or injury" that results in at least two of the following "Paragraph B" criteria: "(1) Marked restriction of activities of daily living; or (2) Marked difficulties in maintaining social functioning; or (3) Marked difficulties in maintaining concentration, persistence, or pace; or (4) Repeated episodes of decompensation, each of extended duration." *Id.* At issue is whether a somatoform disorder was one of Carney's severe impairments or before December 31, 2001.

Upon review of the record, this Court disagrees with the Magistrate Judge's assessment that Carney failed to present evidence that somatoform disorder was among her severe impairments. First, Carney's medical records indicate she was diagnosed with a somatoform disorder in 2008. (*See* Tr. 1044.) However, in determining the onset date of a disability, "the critical date is the date of *onset* of disability, *not* the date of diagnosis." *Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 304 (6th Cir. 1988) (quoting *Swanson v. Sec'y of Health*

& *Human Servs.*, 763 F.2d 1061, 1065 (9th Cir. 1985)) (emphasis in original). Furthermore, "evidence of a medical condition *after* the termination of eligibility status must be considered to the extent that it casts light on claimant's health before that date." *Garland v. Shalala*, 78 F.3d 584, at *9 (6th Cir. 1996) (table). In light of her later diagnosis and the medical records indicating Carney began her exhaustive search for "a single unifying diagnosis for her problems" well before her date last insured (Tr. 477), Carney presented sufficient evidence that her somatoform disorder existed at the time and had more than a "minimal effect" on her. The ALJ's line of questioning during the hearing indicates that he recognized as much. For instance, the ALJ noted Carney's record showed "she was to the doctor about every couple of weeks" seeking a diagnosis (Tr. 87), and that Carney "insisted . . . that she has been conclusively diagnosed" with certain diseases "when there's just really no objective proof" as a sign that Carney's symptoms may have met Listing 12.07 (Tr. 92). Carney's somatoform disorder, as described by the ALJ in the transcript and the Decision (*see* Tr. 28–30), was more than a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work," *see Williamson*, 796 F.2d at 151.

However, Carney has not shown that the ALJ's failure to list somatoform disorder as a severe impairment is reversible error because she has not shown that this failure had any impact on the outcome of her claim. First, Carney has not raised a substantial question as to whether her somatoform disorder was sufficiently severe that she met or equaled Listing 12.07 on or before December 31, 2001. "[I]f a claimant arguably satisfies the criteria of a listed impairment in Appendix 1, it is not proper to preclude a consideration of the listing [at step three] by finding the impairment non-severe at the second stage of the inquiry." *Williamson*, 796 F.2d at 150. However, such a failure is reversible only if the record raises a "substantial question" about

whether Carney "reasonably could meet or equal every requirement of the listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014); *see Sheeks v. Comm'r of Soc. Sec. Admin.*, 544 F. App'x 639, 641–42 (6th Cir. 2013) (holding no substantial question where claimant failed to present evidence of a necessary element of the listing). Although Carney presented ample evidence of her "preoccupation or belief that [she] has a serious disease," she has not presented evidence that she met at least two of the Paragraph B criteria on or before December 31, 2001.

The Court concurs with the ALJ's opinion that Carney has not presented evidence of "repeated episodes of decompensation, each of extended duration" from this period because there are only two documented episodes in her medical records, only one of which met the durational requirement of approximately two weeks. (Tr. 26; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4) (episodes must occur at least three times per year for at least two weeks at a time to meet this criteria).) Furthermore, the ALJ relied on Dr. Felkins' hearing testimony and written assessment in determining Carney had marked difficulties in maintaining concentration, persistence, or pace, but only mild restriction of activities of daily living and moderate difficulties in maintaining social functioning. (Tr. 26, 31–32.) Upon review of the record, the Court concurs with Dr. Felkins' assessment that Carney's level of functioning has "gotten worse" over time (Tr. 93), but the record does not include evidence of marked restrictions in activities of daily living or marked difficulties in maintaining social functioning before December 31, 2001. Thus, Carney has not raised a substantial question about her ability to meet the elements of Listing 12.07.

Furthermore, Carney has not explained (*see* Doc. No. 9-1 at 15–20), and this Court cannot discern, what additional functional limitations should have been placed on Carney due to

her somatoform disorder, other than those already considered by the ALJ in his RFC assessment. As noted by the Magistrate Judge (Doc. No. 14 at 12–13), the ALJ considered the symptoms of fibromyalgia, anxiety, and fatigue Carney suffered from her various conditions. Accordingly, the Court finds the ALJ did not err in failing to list somatoform disorder as a severe impairment.

### B. Anxiety Disorder

To meet the listing for anxiety-related disorders, claimants must show one of five medically-documented findings of anxiety, such as "[g]eneralized persistent anxiety" accompanied by certain physical symptoms or "[r]ecurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week" and either (1) two of the four Paragraph B criteria listed above, or (2) the Paragraph C requirement that the anxiety result "in complete inability to function independently outside the area of one's home." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06. Although the ALJ did not include Carney's anxiety disorder in the list of severe impairments, the ALJ did evaluate whether Carney met this listing. For the reasons stated above, the Court concurs with the ALJ's determination that Carney does not meet the Paragraph B criteria, and agrees that, upon review of the record, Carney did not present evidence that she meets the Paragraph C requirement. Furthermore, as explained by the Magistrate Judge, the ALJ accounted for Carney's anxiety disorder in his assessment of her RFC. Accordingly, the ALJ did not err by failing to include an anxiety disorder in the list of severe impairments.

### C. Chronic Fatigue Syndrome

Chronic Fatigue Syndrome ("CFS") is a medically-determinable impairment that can be the basis of a finding of disability; however, it is not a listed impairment. If a claimant has "fatigue, pain, neurocognitive symptoms, or other symptoms [of CFS that] cause a limitation or

restriction, and they have more than a minimal effect on [the claimant's] ability to perform basic work activities, we must find that the person has a 'severe' impairment." *Titles II & XVI: Evaluating Claims Involving Chronic Fatigue Syndrome (CFS)*, Soc. Sec. Ruling 14-1P, 2014 WL 1371245, at *8 (Apr. 3, 2014) [hereinafter SSR 14-1P]. Upon review of the record, the Court concludes that Carney presented evidence that her CFS rose to the level of a severe impairment. (*See, e.g.*, Tr. 431, 494, 1545, 1594.) However, the ALJ did not err in his subsequent consideration of the effects of Carney's CFS.

CFS is not a listed impairment, thus it cannot be evaluated as such at step three, but "in cases in which a person with CFS has psychological manifestations related to CFS, we must consider whether the person's impairment meets or equals the severity of any impairment in the mental disorders listings." SSR 14-1p at *8. The ALJ followed this requirement, evaluating whether Carney's depression, anxiety disorder, or personality disorder met or equaled a listing. (Tr. 25.) Furthermore, as noted by the Magistrate Judge, the ALJ accounted for fatigue and related symptoms in his RFC assessment. (*See* Tr. 28, 30, 31.) Accordingly, the ALJ did not err in failing to include CFS in Carney's list of severe impairments.

### 2. *Examining and Treating Source Opinions*

Carney contests the Magistrate Judge's finding that the ALJ properly addressed the records of examining sources Dr. Francis Fenaughty and Dr. Larry Felts, and treating source Dr. Gregory Hanissian. Specifically, Carney contends the ALJ improperly dismissed the opinion of Dr. Fenaughty, who opined that Carney "suffers from mixed connective tissue disease or alternatively somatoform disorder" that prevented her from seeking "gainful employment other than in her ex-husbands [sic] dental practice on an intermittent basis" and "was not malingering at all." (Tr. 1629.) She also argues the ALJ was required to at least mention the opinion of Dr.

Felts, who opined that Carney "meets the criteria for having a Somatization Disorder, Generalized Anxiety Disorder, and Major Depressive Disorder" which are "serious physical and psychiatric problems that impair her ability to work. These problems began over 10 years ago and are expected to continue for the foreseeable future." (Tr. 1044–45.) Finally, Carney contends the ALJ should have given greater weight to Dr. Hanissian's opinion that Carney had "a complicated sleep disorder/fibromyalgia syndrome" resulting from "her response to stress" that required her to "take a leave of absence not only from work, but also from any stressful situations, for a period of 3 months." (Tr. 1594.)

### A. Examining Sources—Dr. Fenaughty and Dr. Felts

Although ALJs must "'evaluate every medical opinion [they] receive' . . . not all medical sources need be treated equally" under the Social Security Act. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1527(d) (2012)). The opinions of examining, non-treating medical sources are "entitled to no special degree of deference" from the ALJ. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Furthermore, the ALJ is not required to give "good reasons" for the weight assigned an examining, non-treating source opinion. *Smith*, 482 F.3d at 876. However, the ALJ must consider the following factors in determining the weight given a non-treating source opinion: (1) whether the source has examined the claimant; (2) the length, nature, and extent of the source's treatment relationship with the claimant; (3) the supportability of the source's opinion; (4) whether the opinion is consistent with the record as a whole; (5) whether the source is a specialist in the relevant medical field; and (6) other factors that might support or contradict the opinion. 20 C.F.R. § 404.1527(c).

The ALJ evaluated Dr. Fenaughty's opinion as required under the regulations, determining that Dr. Fenaughty's opinion was entitled to little weight. The ALJ noted Dr.

12

Fenaughty examined Carney once and treated her for "syncope related to a temporary drop in blood pressure," so the "medical records do not support his assertion that he diagnosed her with a connective tissue disease during the three hours she was present." (Tr. 32.) Moreover, Dr. Fenaughty's opinion gave only "a conclusory assertion that Ms. Carney was unable to work" but "fails to give specifics as to what actual limitations were imposed on Ms. Carney's functional ability," and is inconsistent with the "actual medical records from 2000." (Tr. 32.)

The ALJ did not mention Dr. Felts' opinion. Failure to consider an examining source's opinion is grounds for reversal unless the failure is harmless error. 20 C.F.R. § 404.1527(c); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (explaining harmless error findings as applied to treating physicians); *Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 468 (6th Cir. 2004) (applying harmless error standard to non-treating sources). The ALJ's failure to mention Felts' opinion is harmless error if the ALJ ultimately "makes findings consistent with the opinion." *Wilson*, 378 F.3d at 547. However, as the Magistrate Judge noted, Dr. Felts' opinion consists of a summary of her treatment records and diagnoses based on an examination performed seven years after her last insured date. (Tr. 1044–45; Doc. No. 14 at 15.) Accordingly, Dr. Felts was not an examining source in the relevant time period and the ALJ was not required to address his opinion as such. In any case, the ALJ ultimately made findings consistent with Dr. Felts' conclusions—that Carney suffers from somatization disorder, anxiety disorder, and depression that impair her ability to work—as evidenced by the fact that the ALJ addressed these impairments as described in Section III.1 above and determined she was limited to performing only light work "where contact with the public is no more than incidental to the work performed." (Tr. 27.) The ALJ's failure to mention Dr. Felts' letter was harmless error.

B. Treating Source—Dr. Hanissian

Dr. Hanissian is a treating source,[2] thus the ALJ must accord Dr. Hanissian's opinion "controlling weight" if the following conditions are met: "(1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013), reh'g denied (May 2, 2013) (quoting 20 C.F.R. § 404.1527(c)(2)); *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 696 (6th Cir. 2007). If the treating source's opinion is not entitled to controlling weight, the degree of deference owed is determined according to the "length, frequency, nature, and extent of the treatment relationship . . . as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence." *Gayheart*, 710 F.3d at 376 (internal citations omitted). If the ALJ discounts a treating physician's opinion, he must give "good reasons" for doing so that are supported by the evidence in the record and sufficiently specific to permit "meaningful review of the ALJ's application of the rule." *Id.* (internal citations omitted).

A failure to give good reasons "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record" and, unless it is harmless error, is grounds for remand. *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007)). Such an error is harmless if "(1) 'a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it'; (2) 'if the Commissioner adopts the opinion of the treating source or

---

[2] Under 20 C.F.R. §§ 404.1502 and 416.902, a "treating source" is defined as the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." Here Plaintiff's medical records indicate she began seeing Dr. Hanissian in January 2001 (Tr. 1594), and consulted Dr. Hanissian repeatedly through 2003. Dr. Hanissian had an ongoing treatment relationship with Carney and is a treating source under the regulation.

14

makes findings consistent with the opinion'; or (3) 'where the Commissioner has met the goal of § 1527(d)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation.'" *Friend*, 375 F. App'x at 551 (quoting *Wilson*, 378 F.3d at 547).

The ALJ briefly discussed Dr. Hanissian's opinion, noting that he "diagnosed [Carney] with fibromyalgia, but indicated . . . that a majority of her chronic pain is a response to stress." (Tr. 29.) The ALJ's treatment of Dr. Hanissian's opinion does not meet the requirements of the good reasons rule applicable to treating sources because the ALJ did not specify the weight he ultimately accorded Dr. Hanissian's opinion. However, the ALJ did explain why Dr. Hanissian's opinion was not entitled to controlling weight—it was inconsistent with Dr. Hanissian's later treatment records that showed "the bulk of Ms. Carney's lab results were negative, or normal, and that she was generally healthy, with only some tender points noted in March of 2001." (Tr. 29.) The Court finds the ALJ met the goal of § 1527(d)(2) by providing reasons for his decision to discount Dr. Hanissian's opinion.

### 3. *Credibility Determination*

Carney objects to the Magistrate Judge's finding that the ALJ properly evaluated her credibility. Specifically, Carney contends the Magistrate Judge erred in the following ways: he counted an attempt at work as evidence of potential malingering; he considered her passion for horseback riding as evidence that her symptoms were not disabling, even though she was prescribed riding as a form of therapy and she was unable to do it frequently; and he found her condition improved at some points, when she in fact just had good days and bad days. (Doc. No. 19 at 31, 39, 41, 46, 47, 54, 58, 61, 71.)

15

"Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)).

> First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. Relevant factors for the ALJ to consider in his evaluation of symptoms include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions.

*Id.* (internal citations omitted); *accord Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 863 (6th Cir. 2011). Although it is the ALJ's prerogative to evaluate witness credibility, the ALJ's determination must "find support in the record. Whenever a claimant's complaints . . . are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant . . . 'based on a consideration of the entire case record.'" *Rogers*, 486 F.3d at 247; *accord Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 434 (6th Cir. 2013). Furthermore, the ALJ's credibility determination "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248.

The Court concurs with the Magistrate Judge that the ALJ properly evaluated Carney's credibility. The ALJ summarized Carney's hearing testimony and her allegations of multiple suicide attempts, fatigue, fear of associating with other people, excessive sleeping due to the side effects of her medications, pain, and her inability to perform certain household tasks. (Tr. 27–28.) The ALJ then thoroughly summarized Carney's treatment records and the opinion of the

16

Medical Expert, noting that Carney had largely normal findings in physical examinations and laboratory testing, her symptoms were prone to remission, and even when her symptoms were active her physicians' assessments of these symptoms were mild compared to her complaints. The ALJ concluded that Carney's "condition may have deteriorated in the months and years since her December 31, 2001, date last insured, the evidence regarding her abilities and limitations prior to that time, do not support the severity of symptoms and limitations alleged." (Tr. 30.) Upon review of the medical records, the Court finds that the ALJ's treatment of the medical records was fair and accurate, and concurs with the ALJ's assessment. Accordingly, the ALJ did not err in his assessment of Carney's credibility.

## IV. CONCLUSION

For the reasons stated above, the Court **ADOPTS** the Magistrate Judge's Report (Doc. No. 14) as modified above and **DENIES** Carney's Motion (Doc. No. 9). The Clerk of the Court is directed to **CLOSE** the case.

It is so ORDERED.

Entered this the __17th___ day of August, 2015.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT